UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KERI HAUFF,

        Plaintiff,

-against-

STATE UNIVERSITY OF NEW YORK,
FARMINGDALE STATE COLLEGE, and
MARVIN FISCHER, in his individual and
official capacity,

        Defendants.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

18-CV-7256 (DRH)(ARL)

**APPEARANCES:**

**For Plaintiff:**
Fenley LLP
260 Montauk Highway Suite #1
Bay Shore, New York 11706
By: Jason P. Fenley, Esq.

**For Defendant State University of New York, Farmingdale State College:**
Letitia James
Attorney General of the State of New York
300 Motor Parkway, Suite 230
Hauppauge, New York 11788
By: Lori L. Pack, Esq.

**For Defendant Marvin Fischer:**
Sokoloff Stern LLP
179 Westbury Avenue
Carle Place, New York, 11514
By: Mark A Radi, Esq.

**HURLEY, Senior District Judge:**

  Plaintiff Keri Hauff ("Plaintiff" or "Hauff") commenced this action against defendants

State University of New York ("SUNY"), Farmingdale State College (the "College") (together

"State Defendants") and Marvin Fischer ("Fischer") (Fischer and State Defendants are

collectively referred to as "Defendants") pursuant to Title IX of the Education Amendments of 1982, 20 U.S.C.§§1681 et seq. ("Title IX") and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq ("NYSHRL"). Presently before the Court are Defendants' motions to dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions are granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Complaint ("Comp.") and assumed true for purposes of this motion.

SUNY is a system of public institutions, responsible for the enrollment of over 400,000 students and the employment for 80,000 persons. The College is a college within the SUNY system. Both SUNY and the College are recipients of local, state and federal funding. SUNY oversees the New York State University Police, which operates the College's University Police Department ("UPD"). During the relevant period, Fischer was the Chief of the UPD. (Comp. ¶¶ 10-13.)

Plaintiff began her employment with the UPD as a police officer in about September 2005 at the age of 24. She was the only female police officer on the UPD, and from the start, she faced inappropriate conduct and sexual harassment at the hands of Fischer. In July of 2005 at the UPD police academy, Defendant Fischer pulled Ms. Hauff aside from the rest of the police cadets and asked her if she wanted to sit in his car with the air conditioning on. Chief Fischer ogled Plaintiff, made inappropriate comments, and engaged in unwanted advances and touching throughout Plaintiffs career. Fischer would say to Plaintiff in a manner suggesting sexual attraction, "I like you" and "I have my eye on you." When the UPD provided security at the 2009

U.S. Open Golf Tournament at Bethpage State Park, Fischer told Ms. Hauff that she did not have to "work a post" but could drive around with him instead. (Comp. ¶¶ 14-23.)

In May of 2010, Plaintiff confronted Fischer and told him that he was harassing her. Plaintiff enrolled in a cardiac sonography program with the intent of eventually leaving the UPD. Plaintiff later abandoned plans to leave her position with the UPD and instead took a "plain-clothes" assignment with the UPD as an Accreditation Co-Manager. Even after this new assignment, Fischer would stand uncomfortably close to Plaintiff, make crude sexual remarks, ogle and leer at Plaintiff, and touch Plaintiff's back and hands. This behavior occurred two to three times a week. Daniel Daugherty ("Daugherty"), at the time the Accreditation Co-Manager and later the Deputy Chief of the UPD, witnessed these incidents. (*Id*. at ¶¶ 25-35.)

On September 2, 2015 Fischer slapped Plaintiffs buttocks as she bent over to place a folder in a filing cabinet. Fischer then remarked, "I bet your husband doesn't even do that." Plaintiff was horrified and humiliated and confronted Fischer and told him that could never happen again to which he responded "duly noted." This slapping incident convinced her that a formal complaint was necessary. (*Id.* at ¶¶ 41-45.)

Plaintiff went to see Dr. Veronica Henry, the College's Title IX Coordinator. Despite Plaintiff being upset, Dr. Henry required Plaintiff to complete the Title IX complaint packet right then and there. Although Plaintiff checked the box for a formal complaint, Dr. Henry steered Plaintiff away from the formal process, misled Plaintiff about the length of the formal complaint process, and pressured Plaintiff to pursue the informal resolution process. (*Id.* at ¶¶ 49-53.)

As part of the informal process, Fischer admitted to slapping Plaintiffs buttocks and described the act as "an attempt to have some levity in an extremely busy day and break up what

I perceived to be stress". Daugherty admitted to witnessing the slapping incident and the subsequent comment. On September 16, 2015, a Memorandum Resolution was reached, effectively banning further communication between Plaintiff and Fischer. Because the communication ban proved impractical given Plaintiffs duties, Plaintiff and the College agreed to lift the ban on the condition that all communications be "conducted [] in a professional/business related manner only; no personal information shall be asked or inclinations perceived at any time." (*Id.* at ¶¶ 54-61.)

In April of 2016, Plaintiff was promoted to Investigator. Her new role required even more contact with Fischer, and "as the contact between Plaintiff and Fischer increased so did the harassment." However,, no specific instances of harassment for 2016 are described in the complaint. In 2017 Plaintiff began to keep a journal of "the most egregious incidents." Fischer would preface his sexually harassing comments to Plaintiff with qualifiers like "can I say this without getting in trouble" or "I am probably going to get in trouble for saying this, but . . . . " The incidents after her promotion included Fischer referring to a female witness' breast size and using his hands to emphasize large breasts, Fischer asking Plaintiff if he could put up a photo of Plaintiff with two other female police officers on his desk, and Fischer, in the presence of Plaintiff, instructing female officers and staff to use "what they have to get what they want." On July 20, 2017 Fischer entered Daugherty's office where Plaintiff was standing and working with Daugherty. Fischer sat close enough to Plaintiff that he was "almost touching her with his upper legs and thighs." Plaintiff turned away, and when her radio, which was fastened to her belt, made noise, Fischer reached over and grabbed it. "At one point during her tenure, Daugherty said to Plaintiff, "all you ever wanted to do was come to work and do your job, but instead you have to deal with him [Fischer]." On July 21, 2017, Fischer in a common area of the UPD offices, told

his secretary to "go back to my office so you can hear [a female officer] orgasm" after that officer received her new taser holster. On September 12, 2017, Fischer again violated the terms of the Memorandum and the 2016 amendment when he "inquired about the Plaintiff's daughter." (*Id.* at ¶¶ 62 -76.)

On September 15, 2017 "Plaintiff visited Dr. Henry and requested that her journal entries be made part of the complaint file against Fischer. Dr. Henry's secretary . . . stamped the documents received and placed then in the complaint file." Plaintiff "assumed there would be a follow-up investigation from the Title IX office" but there was none. (*Id.* at ¶¶ 78-79.)

On March 28, 2018 Fischer badgered Plaintiff over an issue regarding evidence bags and waived his fist at her. When the officers received an invitation to attend Title IX training, Fischer told Plaintiff that there was "a piece of paper in Dr. Henry's desk preventing us from going together." On August 3, 2018, when a conversation between Fischer and Plaintiff ended, Fischer told Plaintiff "Ok, go on and get your cute little ass outta here." Four days later, Fischer blocked Plaintiffs path to her office and told her "you look really really good today, but that's beside the point" and then began swaying back and forth on his feet while closing his eyes. (*Id.* at ¶¶ 81-84.)

On August 14, 2018, Plaintiff filed another complaint with the College's Title IX Coordinator, Frank Rampello, who had replaced Dr. Henry. When Mr. Rampello retrieved the file on Fischer, the journal entries that Plaintiff had submitted to Dr. Henry on September 15, 2017, were missing. (*Id.* at ¶¶85-87.)

Mr. Rampello convened a panel to investigate Plaintiff's complaint. After a hearing, the panel substantiated the complaint. It also found that Fischer failed to abide by the stipulations of the 2015 agreement. It recommended that Fischer not be allowed to return to the campus in any

capacity. On September 24, 2018, the College's president adopted the panel's findings and required that Fischer separate from service accepting his irrevocable letter of resignation. Notwithstanding that Fischer was forced to resign the College's president sent out a campus wide email wishing him good luck on his retirement. "Fischer has be[en] allowed to return to campus on more than one occasion since his separation from service." (*Id.* at ¶¶ 88-96.)

Based on the foregoing allegations, Plaintiff asserts four causes of action. The first and third causes of action are against the State Defendants for sexual harassment/ hostile workplace in violation of Title IX and the NYSHRL, respectively. The second and fourth causes of action assert that Fischer is liable for aiding and abetting a violation of Title IX and of the NYSHRL, respectively.

## DISCUSSION

I.   **Applicable Standards**

A.   **Federal Rule of Civil Procedure 12(b)(1)**

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). It is also the proper vehicle for arguments that a defendant is protected by sovereign immunity. *Wake v. United States*, 89 F.3d 53, 57 (2d Cir.1996).

 "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp.

2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

### B.        Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc*., 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id*.; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral

documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint).

## II. Position of the Parties

State Defendants raise a number of arguments in support of their motion. First, they assert that Plaintiff's NYSHRL claims against them are barred by the Eleventh Amendment.[1] Second, they maintain that the Title IX claim must be dismissed as employment discrimination claims are not actionable under that statute. To the extent that there is a Title IX hostile work environment claim, they argue that (1) the statute of limitation bars all incidents which occurred prior to December 20, 2015; (2) the September 2015 Memorandum bars all alleged incidents occurring prior to its execution; (3) the College did not have notice of any alleged harassment occurring after the September 2015 Memorandum until August 14, 2018; (4) the behavior complained of does not rise to the level of a hostile environment; (5) they are entitled to the defense enunciated in *Faragher v. City of Boca Raton*, 524 U.S. 775, (1998) and *Burlington Ind., Inc. v. Ellerth*, 742, 765 (1998); and (6) punitive damages are not available in a Title IX case.

Fischer's motion to dismiss asserts the following arguments: (1) there is no individual liability under Title IX; (2) this action is partially time barred; (3) no plausible hostile work environment claim has been stated; (4) no claim for aiding and abetting under the NYSHRL has been stated; and (5) punitive damages are not available against Fischer.

In response, noting that the Second Circuit has not ruled on the issue and there is a split of authority within the Circuit, Plaintiff maintains that her Title IX claim is separate and apart from any Title VII claim. With respect to the statue of limitations arguments, Plaintiff asserts the

---

[1] State Defendants also claim Eleventh Amendment immunity as to any claim pursuant to 42 U.S.C. § 1983 but there is no such claim asserted in the Complaint.

continuing violation and equitable tolling doctrines apply and that, at the very least, pre-limitation period conduct can be used a background evidence. She further disputes the claims that (1) she has not stated a hostile work environment claim under Title IX against the State Defendants and under the NYSHRL against Fischer; and (2) that the State Defendants are entitled to the *Faragher/Ellerth* defense. Lastly, she argues that the State Defendants are not entitled to Eleventh Amendment immunity from Title IX claims and that punitive damages under Title IX are available as against them.

## III.   Format of Decision

By way of format, the Court will first address the issue of Eleventh Amendment Immunity. The next issue to be addressed is whether Title IX provides a private cuase of action for Plaintiff's discrimination claim. The Court will then turn to the issues of timeliness and whether a plausible claim for hostile work environment has been stated. Last to be addressed will be the *Faragher-Ellerth* defense, the NYSHRL claim against Fischer, and the availability of punitive damages.

## IV.   Eleventh Amendment Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

It has long been settled that the reference to actions against one of the United States encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities. Thus, when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Moreover, in addition to barring suits brought against a state by citizens of another state the Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens. *See, e.g., Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Edelman v. Jordan*, 415 U.S. 651 (1974). The Eleventh Amendment generally prohibits suits against state governments in federal court. *Richardson v. New York State Dep't Correctional Serv.,* 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). This jurisdictional bar extends to a state entity that is an "arm of the State." *See Northern Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189 (2006). It also bars an award of damages against state officials in their official capacity. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003)

In this case, the State Defendants assert that dismissal of Plaintiff's NYSHRL and 1983 claims against them is required on the grounds of Eleventh Amendment immunity. There is, however, no § 1983 claim asserted in the complaint. Plaintiff does not address such immunity vis a vis her NYSHRL claim. Rather she argues that Congress abrogated the states' Eleventh Amendment immunity under Title IX. While Plaintiff is correct in that assertion, *see Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 72-73 (1992), it is not an issue raised on the instant motion.

New York State has not waived its Eleventh Amendment immunity and consented to suit in federal court under the NYSHRL. *See Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537–38 (S.D.N.Y. 2014). The College is an agency of New York State. *See Mamot v. Bd. of Regents*, 367 F. App'x 191, 192-93 (2d Cir. 2010) (State University of New York entitled to

immunity under the Eleventh Amendment as an agency of the State of New York); *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 594-95 (2d Cir. 1990) (Eleventh Amendment extends immunity not only to a state, but also to entities considered arms of the State, such as the University). Accordingly, Plaintiff's claims under the NYSHRL against SUNY and the College are barred by sovereign immunity and must be dismissed. *See Wilkinson v. New York State*. 2019 WL 5423573, *7 (E.D.N.Y. Oct. 22, 2019) (dismissed claims against New York and the State University of New York at Stony Brook on Eleventh Amendment grounds). The claims against Fischer in his official capacity are similarly barred. *See id.* Additionally, by failing to address whether Eleventh Amendment immunity applies to her NYSHRL claim against the State Defendants and Fischer in his official capacity, Plaintiff has abandoned those claims, providing another basis for their dismissal. *See, e.g., Wilkov v. Ameriprise Fin. Servs. Inc.*, 753 F. App'x 44, 47 n.1 (affirming district court's dismissal of claims on the grounds they were abandoned when plaintiff failed to oppose them in her opposition to motion to dismiss).

The motions to dismiss on the basis of Eleventh Amendment immunity are granted as to the NYSHRL claims asserted against the State Defendants and as against Fischer in his official capacity.

## V. Availability of Title IX for Plaintiff's Hostile Work Environment Claim

### A. As against the State Defendants

Title IX's relevant portion provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This provision was enacted to supplement the Civil Rights Act of 1964's

bans on racial discrimination in the workplace and in universities. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).

As the parties acknowledge, the Second Circuit has not ruled on whether there is a private right of action for employment discrimination under Title IX, *see Summa v. Hofstra Univ.*, 708 F.3d 115, 131 (2d Cir. 2013). The district courts in this Circuit are divided on this issue. *Compare AB v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y.2004) (holding that an employee alleging gender discrimination was "eligible to bring an action under Title IX"); *Henschke v. N. Y Hospital-Cornell Med. Ctr.,* 821 F. Supp. 166, 171-72 (S.D.N.Y. 1993) (holding that "a private right of action for employment discrimination exists under Title IX separate and apart from Title VII and without regard to the availability of the Title VII remedy")*; Campisi v. The City University of New York,* 2016 WL 4203549 at *4 (S.D.N.Y. 2016) ("courts within this Circuit have suggested that such a cause of action may proceed"); *Kohlhausen v. SUNY Rockland Cnty. Coll.*, 2011 WL 1404934 at *9 (S.D.N.Y. Feb. 9, 2011) ("Title IX provides a private right of action against gender discrimination to employees of federally-funded educational institutions, and . . . this Title IX right of action is not preempted although a remedy under Title VII is also available") *abrogated on other grounds by Leitner v. Westchester Cmty. Coll.,* 779 F.3d 130 (2d Cir. 2015), *with Gayle v. Children's Aid Coll. Prep Charter Sch.*, 2019 WL 3759097, *5-6 (S.D.N.Y. July 19, 2019) ("Plaintiff is an employee of a federally-funded educational institution attempting to bring quintessential Title VII claims of employment discrimination and workplace sexual harassment under Title IX. Title VII provides the exclusive remedy for such claims, therefore the School's and the Society's motions to dismiss Plaintiff's Title IX claims are GRANTED."); *Towers v. State Univ. of New York at Stony Brook,* 2007 WL 1470152 at *4 (E.D.N.Y. 2007) ("The Court agrees with those courts that have held that Title IX

cannot be used to circumvent the remedial scheme of Title VII."); *Vega v. State Univ. of N.Y.*, 2000 WL 381430, *3 (S.D.N.Y. Apr. 13, 2000) ("This Court agrees with the Fifth Circuit and numerous district courts that have held Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex, and limiting money damages under Title IX to student plaintiffs."); *Burrell v. City Univ. of New York*, 995 F. Supp. 398, 410 (1998) ("The concern that Title VII requirements remain intact for employment discrimination claims is persuasive. To hold otherwise would be to create an avenue of relief for employees of federally funded educational institutions which differs significantly from the path afforded to other employees.)[2] It is into this fray the Court now wades.

The Court begins with relevant Supreme Court precedents.

In *Johnson v. Railway Express Agency Inc*., 421 U.S. 454 (1975), the Court held that the "remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct and independent." *Id.* at 461. The Court reasoned that Title VII "manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable federal statutes," rejecting the argument that allowing the § 1981 claim to proceed might permit the plaintiff to circumvent Title VII's administrative requirements, going against Congress' intent. *Id*. at 459, 461.

---

[2] The Circuit Courts that have addressed the issue are also split. The First, Third, Fourth, and Tenth Circuit have held that Title VII does not prevent an employee from pursuing employment discrimination claims under Title IX *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir.1988) (finding employment discrimination against a student-employee actionable under Title IX); *Doe v. Mercy Catholic Medical Center*, 850 F.3d 545, 563 (3d Cir. 2017) ("we decline to follow *Lakoski* and *Waid*, both of which went against the First and Fourth Circuits' decisions recognizing employees' private Title IX claims."); *Preston v. Com. of Va. Ex Rel. New River Com. Coll*., 31 F. 3d 203,206 (4th Cir. 1994) (holding that Title IX private cause of action "extends to employment discrimination on the basis of gender by educational institutions receiving federal funds."); *Hiatt v. Colorado Seminary*, 858 F.3d, 1307, 1315 (10th Cir. 2017); *see also Ivan v. Kent State Univ*., 1996 WL 422496, at *3 n.10 (6th Cir. 1996) (unpublished opinion overruling the district court's conclusion that "Title VII preempts an individual's private remedy under Title IX"). The Fifth and Seventh Circuits have held to the contrary. S*ee Lakoski v. James*, 66 F.3d 751, 755 (5th Cir.1995); *Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir 1996).

In *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the Supreme Court implied a private cause of action under Title IX for an applicant who sued a medical school alleging she was denied admission based on her sex. The Court reasoned that Title IX "explicitly confers a benefit on persons discriminated against" based on sex and the plaintiff was "a member of that class for whose special benefit the statute was enacted. *Id.* at 694. Later, in *Franklin v. Gwinnett County Public Schools*, the Court held that money damages were available for a student asserting a claim for sexual harassment under Title IX. 503 U.S. 60, 72-76 (1992).

The Court, in *North Haven Board of Education v. Bell*, 456 U.S. 512 (1982), rejected a challenge to agency promulgated regulations interpreting Title IX to extend to sex-based employment discrimination. It held that Title IX's prohibition of sex discrimination applies not only to students, but also to "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans, or contract." *Id.* at 520. In reaching that conclusion, the Court reviewed Title IX's legislative history and found employees of federally funded education programs and employment discrimination in academia an important focal point of Title IX. *Id.* at 523-30. It also discussed how subsequent proposals in Congress to limit Title IX's coverage of employment discrimination have failed. *Id.* at 534-35. Finally, the *North Haven* Court recognized that Congress had provided "a variety of remedies, at time overlapping, to eradicate" private sector employment discrimination. *Id.* at 535.

Lastly, in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), a high school employee relieved of his coaching position after he complained that the girls' basketball team received unequal treatment on the basis of sex sued alleging a Title IX retaliation claim. The Court allowed the claim to proceed reasoning that if funding recipients were "permitted to retaliate freely," individuals who witness sex discrimination would be hesitant to report it and

"all manner of Title IX violations might go unremedied." *Id*. at 180. Although not explicitly

addressed, the Court did not indicate that Title VII displaced relief under Title IX. Rather, it

recognized that the two statute are "vastly different;" Title IX contains a "broadly written general

prohibition on discrimination" whereas Title VII has "greater detail" as to "the conduct that

constitutes discrimination." *Id.*at 175.

This Court's analysis of the foregoing cases supports an implied cause of action under

Title IX for employees of educational institutions receiving federal funding and that such a cause

of action is not displaced by Title VII. First, as the *North Haven* Court found, the legislative

history supports that Title IX extends to employment discrimination in educational institutions.

456 U.S. at 523-30. Indeed, in the Senate, Title IX was introduced as "targeting "admission

procedures, scholarships, and faculty employment." 118 Cong. Rec. 5803 (1972). Similarly, in

the House it was proposed to combat, in addition to disparities in student admission standards,

"at the faculty level, sex differences in rank and salary at colleges and universities." H. R. Rep.

No. 92-554 (1972).  Moreover, the Supreme Court's analysis in *Cannon* was not explicitly

limited to students as it held that is was inferring a private remedy in favor of "individual

persons," 441 U.S. at 691, which term the *North Haven* Court later defined to include both

students and employees, 456 U.S. at 520-21. Finally, the recognition in *Johnson* that Title VII

"manifests a congressional intent to allow an individual to pursue independently his rights under

both Title VII and other applicable federal statutes, coupled with the reasoning in *Jackson* that

Title IX and Title VII are vastly different statutes, further supports the availability of Title IX for

employment discrimination claims by employees of educational institutions.

State Defendants argue that, even if there is an implied cause of action for employees,

said employees must be involved in an educational program or activity, a condition Plaintiff

herein cannot meet. They maintain that in each of the cases cited by Hauff the plaintiff was involved in an educational program or activity. They also rely on the Department of Justice Title IX Legal Manual as support for their argument. The Court rejects the argument that such a requirement should be grafted onto a Title IX claim by an employee of an educational institution.

Whether such a nexus is required was considered and rejected by the court in *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112 (D. Kan. 2017) wherein a custodian employed by an educational institution asserted a claim for a hostile work environment under Title IX and Title VII. In addressing the issue of nexus, that court began its analysis by noting that 1987 amendment to Title IX, enacted as part of the Civil Rights Restoration Act of 1987, was enacted in response to prior holdings of the Supreme Court limiting Title IX's reach to programs that received federal funding. It then reasoned:

> The amendment sought to clarify § 1681(a), which reads that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The amendment to Title IX specified that the term "program" as used in § 1681 means "all of the operations of" the institution that received federal funding, regardless of whether the specific program at issue benefitted from that funding. Indeed, the Senate Report addressing the Civil Rights Restoration Act of 1987 clarified that discrimination is "prohibited throughout entire agencies or institutions if any part receives Federal financial assistance," and that "all of the operations of" an educational institution or system would include, but is not limited to: "traditional educational operations, faculty and student housing, campus shuttle bus service, campus restaurants, the bookstore, and other commercial activities." Overall, the amendment's purpose was to reaffirm pre-*Grove City College* judicial and executive branch interpretations and enforcement practices which provided for "broad coverage" of the anti-discrimination provisions of these civil rights statutes.
>
> The Court rejects Defendant's argument that the 1987 amendment to Title IX only decided the issue of whether the institution as a whole is covered, and that a plaintiff still needs to show that her work had a "nexus" to educational programs or activities. Given Title IX's broad language, this position simply does not comport with the plain language of the statute—"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity

receiving federal financial assistance." The Supreme Court has read "no person" broadly; as *North Haven* puts it so aptly, "[b]ecause § [1681(a) ] neither expressly nor impliedly excludes employees from its reach, we should interpret the provision as covering and protecting these 'persons' unless other considerations counsel to the contrary. After all, Congress easily could have substituted 'student' or 'beneficiary' for the word 'person' if it had wished to restrict the scope of § [1681(a) ]."

Further, the requirement of a nexus to "education" is not consistent with Title IX's broad purpose, which is "to avoid the use of federal resources to support discriminatory practices" and "provide individual citizens effective protection against those practices."

*Id.* at 1124-25 (citations and footnotes omitted).

This Court finds the above reasoning persuasive. Indeed, the legislative history for the 1987 Amendment supports that Congress intended for Title IX to cover all facets of educational institutions including "campus shuttle bus service, campus restaurants, the bookstore, and other commercial activities." S. Rep. No. 100–64, at 17 (1987).

Nor does the Department of Justice Title IX Legal Manual, upon which State Defendant's rely, suggest a different result. Indeed, in its introduction, the manual states:

[T]his document is not intended to be a guide for Title IX enforcement with respect to traditional educational institutions such as colleges, universities, and elementary and secondary schools, which have been subject to the Department of Education's Title IX regulations and guidance for 25 years. Rather, this manual is intended to provide guidance to federal agencies concerning the wide variety of other education programs and activities operated by recipients of federal financial assistance."

Finally, to paraphrase the *Fox* court:

The Court further rejects [the] suggestion that Congress intended for Title IX to distinguish the [security] staff as any less a part of the university or deserving of protection than faculty. [State] Defendant[s] asks this Court to draw an arbitrary line that prohibits [police officers employed by an educational institution] from asserting Title IX claims but allows professors or teachers. [They] ignores the fact that there are hundreds of different types of employees at a university or on a

university campus, such as bus drivers, cafeteria workers, librarians, childcare workers, bookstore employees, docents at the university art museum, athletic directors, resident assistants at dorms, and student admissions recruiters. Nothing [State] Defendants cite[] persuades this Court that Title IX is meant to allow claims by some of these employees but not all. Title IX must be given "a sweep as broad as its language."

257 F. Supp. 3d at 1125.

State Defendants' motion to dismiss the Title IX cause of action is denied.

**B.     As Against Fischer**

Fischer seeks dismissal of the Title IX claim against him on the grounds that there is no individual liability under Title IX.

The Supreme Court has held that Title IX creates liability only for institutions and programs that receive federal funds, but "has consistently . . . interpreted [it] as not authorizing suit against school officials, teachers, and other individuals*." Fitzgerald v. Barnstable Sch. Comm*., 555 U.S. 246, 257 (2009); 20 U.S.C. § 1681(a). Accordingly, "the overwhelming majority of federal courts" in this Circuit have held that "only the institutional recipient of federal funds can be held liable under Title IX; individuals, who are not recipients, cannot be held liable." *Tesoriero v. Syosset Cent. Sch. Dist*., 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005); see also *Welcome v. N.Y.C. Dep't of Educ.*, 2018 WL 5817156, at *4 (E.D.N.Y. Nov. 6, 2018) (citing cases*); Chandrapaul v. City Univ. of N.Y.*,  2016 WL 1611468, at *14 (E.D.N.Y. Apr. 20, 2016) ("There is no individual liability under Title IX."); *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist*., 2013 WL 177911, at *8 (S.D.N.Y. Jan. 16, 2013), *aff'd*, 531 F. App'x 132 (2d Cir. 2013). As Title IX does not authorize individual liability and Plaintiff does not allege that Fischer was a recipient of federal funds, the Title IX claims against him are dismissed.

**VI.     Timeliness of Title IX Claims**

Claim brought pursuant to Title IX are subject to a three-year statute of limitations. *Purcell v. New York Inst. of Tech. – Coll. Of Osteopathic Medicine*, 931 F.3d 59, 65 (2d Cir. 2019). Based on the foregoing, Defendants maintain that incidents prior to December 20, 2015 (three years prior to the filing of the instant lawsuit) and not actionable. Plaintiff seeks to avoid the statute of limitations bar relying upon the continuing violations doctrine and equitable tolling.

**A.     The Continuing Violations Doctrine**

Under the continuing violation doctrine, if a plaintiff experiences a "'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Hudson v. W. N.Y. Bics Div.*, 73 F. App'x 525, 528 (2d Cir. 2003) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). The continuing violation doctrine applies to "claims that by their very nature involve[ ] repeated conduct." *Troeger v. Ellenville Cent. Sch. Dis*t., 523 F. App'x 848, 851 (2d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). The prototypical example is a hostile work environment claim, which "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Morgan*, 536 U.S. at 117. Because the discriminatory practice cannot be said to occur on a particular day, and because each individual act of harassment may not be actionable on its own, these claims are of a different nature than discrete acts. *Id*. at 115 (citing *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993)). This is why such claims do not accrue until the last act in furtherance of the allegedly discriminatory practice. *See Hudson*, 73 F. App'x at 528: *accord Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (Under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the

statute of limitations as long as "an act contributing to that hostile environment [took] place within the statutory time period." ) As the Court in *Villar v. City of New York*, 135 F. Supp. 3d 105 (S.D.N.Y. 2015), noted:

> "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105, 122 S.Ct. 2061. "[I]f 'any act falls within the statutory time period,' we need 'to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice.' " *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir.2010) (quoting *Morgan*, 536 U.S. at 120, 122 S.Ct. 2061). An "incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." *McGullam*, 609 F.3d at 77.

135 F. Supp. 3d at 131.

Here, similar instances of harassment by Fischer both before and after December 20, 2015, are alleged. Thus, as a matter of pleading, there are sufficient allegations to support application of the continuing violations doctrine.[3]

## VII.    Effect of the 2015 Memorandum

According to the State Defendants, because "Plaintiff has raised no allegations that she entered into the 2015 Memorandum under duress, was unaware of the terms and conditions of the Memorandum, or that the Memorandum was unfair in any way", the "issues which were 'resolved to her satisfaction' cannot be resurrected because of subsequent events."  (State Defs.' Mem. at 5; *see also* Fischer Mem. at 18.).) This argument is unavailing.

First, the argument ignores the allegations that although Plaintiff indicated on the College's form that it was a formal complaint. Dr. Henry steered her away from that process and misled her about it. Second, it ignores the allegation regarding the College's response, to wit:

---

[3] Given the Court's conclusion that there are sufficient allegations to support application of the continuing violations doctrine, it is unnecessary at this juncture to address Plaintiff's equitable tolling argument.

"effectively banning communication between Plaintiff and Fischer." (Comp. at 53.) Given Fischer's position of Chief of Police and Plaintiff's position as an officer in his department, such a resolution seems largely unworkable. Indeed, as alleged in the Complaint, "the communication ban posed problematic on a day-to day basis and proved inefficient" resulting in its modification requiring that "the extent of their contact was to be 'conducted in a professional/business related manner only; no personal information shall be asked or inclinations perceived at any time.'" (Compl. at ¶ 61.)  Finally, at this early stage of the litigation it would appear that occurrences prior to the September Memorandum may be relevant as part the alleged continuing course of conduct and whether Plaintiff's work environment was objectively hostile and abusive.

## VIII.   Whether a Hostile Work Environment Claim Has Been Sufficiently Pleaded

A Title IX hostile education environment claim is governed by traditional Title VII hostile environment jurisprudence. *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 89 (2d Cir. 2011) (internal quotation marks omitted). "In order to state a claim for violation of Title IX, a plaintiff must demonstrate that: [i] she is a member of a protected group; [ii] she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; [iii] the harassment was based on sex; [iv] the harassment was sufficiently severe or pervasive so as to alter the conditions" of her employment "and create an abusive  . . . environment; and [v] some basis for institutional liability has been established." *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 281-82 (E.D.N.Y. 2002) (citing *Babcock v. Frank*, 783 F. Supp. 800, 808 (S.D.N.Y. 1992)).

Significantly, to survive a Rule 12(b)(6) motion to dismiss, a Title VII complaint need not establish every element of a prima facie hostile work environment claim. "At the motion to

dismiss stage, ... 'a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Cowan v. City of Mount Vernon*, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks and alterations omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). "In evaluating whether the circumstances" set forth in a complaint "suffice to find a hostile work environment, the [Second Circuit] has 'repeatedly cautioned against setting the bar too high.' " *Lewis v. Roosevelt Island Operating Corp*., 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) (quoting *Patane*, 508 F.3d at 113). The hostility of a work environment should be assessed based on the "totality of the circumstances." *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id*. "The Second Circuit 'treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis.' " *Olivier v. Cty. of Rockland*, 2018 WL 401187, at *5 (S.D.N.Y. Jan. 11, 2018) (citing *Aulicino v. N.Y.C. Dep't of Homeless Servs*., 580 F.3d 73, 82 (2d Cir. 2009)). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' " *Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). But "'a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace.'" *Green v. Jacob & Co. Watches, Inc*., 248 F. Supp. 3d 458, 470 (S.D.N.Y. 2017) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)).

With regard to the final factor, to establish institutional liability for sexual harassment under Title IX, the plaintiff must show that 'an official who has authority to address the alleged discrimination and to institute corrective measures on the institutional recipient's behalf has actual knowledge of discrimination and fails adequately to respond." *Campisi v. City University of New York*, 2016 WL 4203549, at *4 (S.D.N.Y., 2016) (internal quotation marks omitted) (citing *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 281-82 (E.D.N.Y. 2002)). "A school fails to adequately respond if it provides no response or if it provides a response that amounts to deliberate indifference to discrimination. The school's response to sex discrimination must be clearly unreasonable in light of known circumstances." *Papelino*, 633 F.3d at 89 (internal quotation marks and citations omitted).

Applying these principles, Plaintiff has stated a hostile work environment claim. The conduct complained includes sexual advances and innuendo, leering and unwanted physical touching, including the slapping of Plaintiff's buttocks and encroaching on her personal space. *Cf. Gorzynski*, 596 F.3d at 102 (holding that evidence that defendant "made numerous (approximately six) sexual comments and on multiple occasions grabbed [plaintiff] and other around the waist, tickled and stared as if he was mentally undressing them" sufficient to defeat summary judgment motion).

Plaintiff has also alleged sufficient notice to the State Defendants to support a Title IX claim. The first notice was to Dr. Henry, the Title IX coordinator, in September 2015. The second notice was in September 2017, again to Dr. Henry, when Plaintiff submitted to Dr. Henry her journal entries detailing further alleged harassment. Finally, the third notice was to Mr. Rampello, who succeeded Dr. Henry as Title IX coordinator, in 2018. Focusing on the second notice, the allegation that no investigation or inquiry was commenced as a result, especially in

view of Plaintiff's September 2015 complaint and Fischer admission that that he slapped Plaintiff's buttocks, is sufficient as a matter of pleading to support an inference of notice and an inadequate response. With respect to the third notice, i.e. the complaint filed with Mr. Rampello, given that an investigation and hearing was conducted, resulting in the termination of Fischer's employment, it would appear that the response was not clearly unreasonable. How that affects the alleged inadequate response to the September 2017 complaint is not directly addressed by the parties. Although Defendants argue that the response to the 2018 complaint should result in the dismissal of her entire Title IX claim, the Court is unconvinced as the cases cited by Defendants do not address a similar scenario.

The motions to dismiss the hostile work environment claim on the basis Plaintiff has failed to plausibly allege a hostile work environment is denied.

## IX. The *Faragher-Ellerth* Defense

Where, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer unless the employer can prove by a preponderance of the evidence that it is protected by the *Faragher/*Ellerth defense. *See Gorzynski*, 596 F.3d at 103. The *Faragher/Ellerth* defense consists of two elements: (1) that "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Assuming the defense is available in a Title IX action, as

discussed earlier, the Complaint contains allegations that support that the State defendants did not exercise reasonable care to prevent and correct the hostile work environment created by Fischer. Accordingly, dismissal on the basis on *Faragher/Ellerth* is not appropriate.

## XI. The NYSHRL Claim against Fischer

Fischer seeks dismissal of the NYSHRL aiding and abetting claim asserted against him on the grounds that dismissal of plaintiff's underlying hostile work environment claim requires dismissal of her aiding and abetting claim. As the Court has determined that a plausible hostile work environment claim has been stated, this portion of Fischer's motion is denied on the argument presented.[4]

## X. Availability of Punitive Damages

The last issue to be addressed is the availability of punitive damages.

While there is no controlling authority in this circuit on the issue of the availability of punitive damages in a Title IX action, a number of courts have held they are not available. See, e.g. *Mercer v. Duke Univ.,* 50 F. App'x 643, 644 (4th Cir. 2002); *Pejovic v. State Univ. of New York at Albany*, 2018 WL 3614169, at *7 (N.D.N.Y. July 26, 2018); *Spring v. Alleghany-Limestone Cent. Sch. Dist.,* 2017 6512858, at *10 (W.D.N.Y. Dec. 20, 2017).  In each of the foregoing cases, the courts reached that conclusion in view of the holding in *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) that punitive damages are not available under Title VI and the fact that Title IX is "[p]atterned after Title VI," *North Haven*, 456 U.S.  at 514. This Court agrees. Accordingly, the claim for punitive damages against the State Defendants is dismissed.

---

[4] The Court notes that the argument that a person "cannot be held liable for 'aiding and abetting' his own conduct has been rejected by numerous courts in this Circuit." *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp.3d 296, 311-12 (S.D.N.Y. 2016 (citing *Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp.3d 300, 338 (E.D.N.Y. 2015 (collecting cases)).

As the NYSHRL does not permit punitive damages, *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001), the punitive damages claim against Fischer is also dismissed.

## CONCLUSION

For the reasons set forth above, the motions to dismiss are granted as to (1) the NYSHRL claim against the State Defendants and as against Fischer in his official capacity; (2) the Title IX claim against Fischer; and (3) the claims for punitive damages against all Defendants; the motions are otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York            _s/ Denis R. Hurley_
      December 3, 2019                 Denis R. Hurley
                                          United States District Judge